UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| GIFTCASH INC., <br><br> Plaintiff, <br><br> v. <br><br> THE GAP, INC., et al., <br><br> Defendants. | Case No. 3:23-cv-02146-WHO <br><br> **ORDER GRANTING IN PART AND DENYING IN PART MOTION TO DISMISS** <br><br> Re: Dkt. No. 50 |

Plaintiff GiftCash, Inc., filed an amended complaint concerning its allegations that defendants The Gap, Inc., Banana Republic, LLC, Old Navy, LLC, and Direct Consumer Services, LLC, (collectively, "the defendants") acted unlawfully and unfairly when they devalued thousands of dollars in gift cards purchased by GiftCash on the secondary market. The defendants now move to dismiss all but the conversion claim, which I previously found was sufficiently pleaded. GiftCash sufficiently alleges standing for injunctive relief, though it should amend its request for equitable restitution to be pleaded in the alternative to money damages. It also sufficiently states a claim under the UCL but fails to state a claim under the FAL. For those and the following reasons, the motion is GRANTED in part and DENIED in part.

**BACKGROUND**

**I.    FACTUAL BACKGROUND**

This Order assumes familiarity with the factual background outlined in my prior order dismissing the complaint with leave to amend. ("Prior Order") [Dkt. No. 46]. Pertinent factual allegations made in the operative First Amended Complaint ("FAC") are taken as true and are as follows. [Dkt. No. 47].

GiftCash is a Canadian company that buys and sells gift cards on the "secondary market."

FAC ¶ 20. Approximately one third of its inventory consists of gift cards for the defendants' companies and stores and so revenue from these cards "is a significant component" of GiftCash's income and business. *Id.* ¶¶ 33, 35. As of April 18, 2023, GiftCash owned over $440,000 worth of the defendants' gift cards, which were still in its possession as of the filing of the FAC. *Id.* ¶¶ 21-22. In the two weeks before April 18, GiftCash also sold 146 of the defendants' gift cards to third party buyers. *Id.* ¶ 23.

GiftCash says that the defendants' websites provide that their gift cards are redeemable "at any of our brands online and in stores." *Id.* ¶ 16. It includes hyperlinks[1] to the defendants' gift card policies and says that the websites "materially omit" the defendants' "authority" to devalue their gift cards. *Id.* ¶ 17 & nn. 4-6.

On April 19, 2023, GiftCash discovered that many of its gift cards had been "devalued," and it subsequently learned that the total devaluation affected 3,025 gift cards, amounting to $482,498. *Id.* ¶¶ 25, 29. The defendants informed GiftCash that the cards were "associated with suspended accounts that were served trespass letters," meaning that they were linked with fraud. *Id.* ¶ 27. GiftCash says it never received a trespass letter. *Id.* ¶¶ 27-28.

GiftCash alleges that the defendants knew its business model was based on buying and selling gift cards on the secondary market. *Id.* ¶¶ 31-32. It asserts that the defendants made unlawful, unfair, or fraudulent misrepresentations and omissions in "an anticompetitive scheme" to engage in unfair competition, "devalue a competitor's product[,] and receive an illegal windfall." *Id.* ¶¶ 69-70.

Now GiftCash brings four cases of action grounded in its allegations about the defendants' conduct: (1) conversion under California Civil Code section 1749.6, *id.* ¶¶ 48-59; (2) "Unjust Enrichment/Restitution," *id.* ¶¶ 60-67; (3) violation of California's Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code §§ 17200, et seq., *id.* ¶¶ 68-76; and (4) violation of California's False Advertising Law ("FAL"), Cal. Bus. & Prof. Code §§ 17500, et seq., *id.* ¶¶ 77-89.

---

[1] I previously took judicial notice of the existence of the statements on these websites, though not the truth of these statements. *See* Prior Order 5 n.1.

## II. PROCEDURAL BACKGROUND

I previously granted in part and denied in part the defendants' first motion to dismiss, finding that GiftCash's conversion claim survived and dismissing the remaining claims with leave to amend. *See* Prior Order.

Now the defendants have filed a motion to dismiss the claims for unjust enrichment and restitution and for violations of the UCL and FAL. ("Mot.") [Dkt. No. 50]. GiftCash opposed. ("Oppo.") [Dkt. No. 51]. The defendants replied. ("Repl.") [Dkt. No. 52]. Under Civil Local Rule 7-1(b), I find this matter appropriate for resolution without oral argument and so VACATE the hearing scheduled for November 29, 2023.

## LEGAL STANDARD

### I. RULE 12(B)(1)

A motion to dismiss filed pursuant to Federal Rule of Civil Procedure ("FRCP") 12(b)(1) is a challenge to the court's subject matter jurisdiction. *See* Fed. R. Civ. Proc. 12(b)(1). "Federal courts are courts of limited jurisdiction," and it is "presumed that a cause lies outside this limited jurisdiction." *Kokkonen v. Guardian Life Ins. of Am.*, 511 U.S. 375, 377 (1994) (citations omitted). The party invoking the jurisdiction of the federal court bears the burden of establishing that the court has the requisite subject matter jurisdiction to grant the relief requested. *Id.*

A challenge pursuant to Rule 12(b)(1) may be facial or factual. *See White v. Lee*, 227 F.3d 1214, 1242 (9th Cir. 2000). In a facial attack, the jurisdictional challenge is confined to the allegations pled in the complaint. *See Wolfe v. Strankman*, 392 F.3d 358, 362 (9th Cir. 2004). The challenger asserts that the allegations in the complaint are insufficient "on their face" to invoke federal jurisdiction. *See Safe Air Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004). To resolve this challenge, the court assumes that the allegations in the complaint are true and draws all reasonable inference in favor of the party opposing dismissal. *See Wolfe*, 392 F.3d at 362.

"By contrast, in a factual attack, the challenger disputes the truth of the allegations that, by themselves, would otherwise invoke federal jurisdiction." *Safe Air*, 373 F.3d at 1039. To resolve this challenge, the court "need not presume the truthfulness of the plaintiff's allegations." *Id.*

3

1 (citation omitted). Instead, the court "may review evidence beyond the complaint without 2 converting the motion to dismiss into a motion for summary judgment." *Id.* (citations omitted). 3 Once the moving party has made a factual challenge by offering affidavits or other evidence to 4 dispute the allegations in the complaint, the party opposing the motion must "present affidavits or 5 any other evidence necessary to satisfy its burden of establishing that the court, in fact, possesses 6 subject matter jurisdiction." *St. Clair v. City of Chico*, 880 F.2d 199, 201 (9th Cir. 1989); *see also* 7 *Savage v. Glendale Union High Sch. Dist. No. 205*, 343 F.3d 1036, 1040 n.2 (9th Cir. 2003).

## II. RULE 12(B)(6)

Under FRCP 12(b)(6), a district court must dismiss a complaint if it fails to state a claim upon which relief can be granted. To survive a Rule 12(b)(6) motion to dismiss, the plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is facially plausible when the plaintiff pleads facts that "allow the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted). There must be "more than a sheer possibility that a defendant has acted unlawfully." *Id.* While courts do not require "heightened fact pleading of specifics," a plaintiff must allege facts sufficient to "raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555, 570.

In deciding whether the plaintiff has stated a claim upon which relief can be granted, the Court accepts the plaintiff's allegations as true and draws all reasonable inferences in favor of the plaintiff. *See Usher v. City of Los Angeles*, 828 F.2d 556, 561 (9th Cir. 1987). However, the court is not required to accept as true "allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *In re Gilead Scis. Sec. Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008).

If the court dismisses the complaint, it "should grant leave to amend even if no request to amend the pleading was made, unless it determines that the pleading could not possibly be cured by the allegation of other facts." *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000). In making this determination, the court should consider factors such as "the presence or absence of undue delay, bad faith, dilatory motive, repeated failure to cure deficiencies by previous amendments,

4

1  undue prejudice to the opposing party and futility of the proposed amendment." *Moore v. Kayport*
2  *Package Express*, 885 F.2d 531, 538 (9th Cir. 1989).

**III.    RULE 9(B)**

FRCP 9(b) imposes a heightened pleading standard where a complaint alleges fraud or mistake.  Under FRCP 9(b), to state a claim for fraud, "a party must state with particularity the circumstances constituting fraud," and the allegations must be "specific enough to give defendants notice of the particular misconduct . . . so that they can defend against the charge and not just deny that they have done anything wrong." *Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1124, 1126 (9th Cir. 2009) (citations omitted).  Averments of fraud must be accompanied by 'the who, what, when, where, and how' of the misconduct charged." *Vess v. Ciba-Geigy Corp.*, 317 F.3d 1097, 1106 (9th Cir. 2003) (citation omitted).  However, "Rule 9(b) requires only that the circumstances of fraud be stated with particularity; other facts may be plead[ed] generally, or in accordance with Rule 8." *United States ex rel. Lee v. Corinthian Colls.*, 655 F.3d 984, 992 (9th Cir. 2011) (emphasis omitted).

**DISCUSSION**

**I.    STANDING FOR INJUNCTIVE RELIEF**

The defendants first move to dismiss GiftCash's claims seeking injunctive relief, arguing that GiftCash lacks standing because it fails to plausibly allege an actual and imminent threat of future injury.  *See* Mot. 11:22-14:17.  In opposition, GiftCash says that it plausibly alleges standing for injunctive relief by pleading that its business depends on buying and selling the defendants' gift cards so it wants to continue doing so in the future, but it faces an actual, imminent threat of harm from the defendants' policy of indiscriminately devaluing those gift cards.  *See* Oppo. 4:22-9:8.  GiftCash's complaint seeks an injunction to prohibit the defendants from ever devaluing the cards GiftCash purchases, though the opposition disclaims that request and instead seeks an injunction against the defendants' alleged practice of indiscriminately devaluing GiftCash's cards rather than limiting devaluation to those linked to fraud.  *Compare* FAC ¶¶ 2, 35, *with* Oppo. 6:12-19.

To establish standing for injunctive relief, a plaintiff must plead a "threat of injury" that is

"actual and imminent, not conjectural or hypothetical." *Davidson v. Kimberly-Clark Corp.*, 889 F.3d 956, 967 (9th Cir. 2018) (quoting *Summers v. Earth Island Inst.*, 555 U.S. 488, 493 (2009)). Once plaintiffs have been wronged, they are entitled to injunctive relief only if they can show that they face a "real or immediate threat that [they] will again be wronged in a similar way." *Mayfield v. United States*, 599 F.3d 964, 970 (9th Cir. 2010) (citations and internal punctuation omitted). "Where standing is premised entirely on the threat of repeated injury, a plaintiff must show 'a sufficient likelihood that [it] will again be wronged in a similar way.'" *Davidson*, 889 F.3d at 967 (quoting *City of Los Angeles v. Lyons*, 461 U.S. 95, 111 (1983)). It may do so by alleging it "would like to purchase the [product] in the future but cannot rely on" the existing label or advertising. *Gagetta v. Walmart, Inc.*, 646 F. Supp. 3d 1164, 1176-77 (N.D. Cal. 2022); *see also Davidson*, 889 F.3d at 967, 969; *Brown v. Van's Int'l Foods, Inc.*, No. 22-CV-00001-WHO, 2022 WL 1471454, at *11 (N.D. Cal. May 10, 2022) ("*Brown II*") (finding standing for injunctive relief where plaintiff alleged she "continues to desire to purchase [defendant's] products," "would likely purchase the products again in the future," and "regularly visits stores where [defendant's] products are sold").

GiftCash's standing argument is premised on the threat of repeated injury—devaluation of gift cards—and it can establish standing by plausibly alleging that it wants to purchase the cards in the future but cannot rely on the existing product advertising. *See Gagetta*, 646 F. Supp. 3d at 1176-77. GiftCash meets the first part of this standard by plausibly alleging that it would purchase the cards in the future because it asserts that it is still in the business of buying and selling gift cards and that a significant portion of its business relies on the defendants' cards. *Cf. Brown II*, 2022 WL 1471454, at *11.

Whether GiftCash plausibly alleges the second part of the standard, inability to rely on the existing advertising in the future, depends somewhat on the relief its seeking. Assuming GiftCash seeks the narrower, more nuanced injunction it proposes in its opposition, which would enjoin the defendants' practice of indiscriminately devaluing GiftCash's gift cards regardless of their connection to fraud, then it sufficiently pleads threat of future injury and establishes standing for

1    injunctive relief.[2]  Its allegations are similar to those in *Chaplin v. Walmart, Inc.*, No. 3:23-CV-
2    00878-WHO, 2023 WL 4843956, at *5-6 (N.D. Cal. May 25, 2023), where the plaintiff alleged
3    that he wanted to buy a safe and effective product and that the defendant marketed the product as
4    safe and effective when it was not, so without injunctive relief he could not rely on the marketing
5    in the future to know whether the product he bought was safe and effective.  I found that was
6    sufficient to plead threat of future harm for standing for injunctive relief, not because the plaintiff
7    sought reformulation of the product—he did not—but because he risked being "wronged again in
8    a similar way as in the past" when he previously purchased an unsafe and ineffective product.  *Id.*

9    Here, as in *Chaplin*, GiftCash alleges that it was harmed in the past when a product it
10   purchased was indiscriminately devalued and that it wants to purchase the product in the future but
11   risks the same injury of indiscriminate devaluation.  It says it cannot rely on the defendants'
12   websites because they omit any warning of indiscriminate devaluation.  *Cf. id.*  Without injunctive
13   relief to prohibit indiscriminate devaluation, GiftCash risks relying on those same posted policies
14   to purchase gift cards not linked to fraud, and again being harmed by indiscriminate devaluation of
15   non-fraudulent cards.  Taking these allegations as true, this is sufficient to show that GiftCash
16   cannot rely on existing advertising with existing omissions to avoid future harm.  *See id.*; *see also*
17   *Davidson*, 889 F.3d at 967.  Therefore, under the rule from *Davidson* and as explained in many
18   other cases, GiftCash sufficiently alleges likelihood of wrong in a similar way, and so establishes
19   standing for injunctive relief.

20   Accordingly, proceeding on the theory that the defendants have no right to unilaterally and
21   indiscriminately devalue all gift cards associated with GiftCash that are not linked to fraudulent
22   activity, GiftCash's case may move forward and seek injunctive relief.  However, because the
23   FAC is not entirely clear that this is the injunctive relief that GiftCash is seeking, GiftCash has
24   leave to amend to clarify its request.  Assuming it does so, its allegations are sufficiently pleaded

---

[2] It makes sense that GiftCash is seeking the narrower form of injunctive relief detailed in the opposition because that best aligns with its theory of the case, as presented to me thus far. GiftCash is arguing that the defendants have no right to unilaterally and indiscriminately devalue all gift cards associated with GiftCash that are not linked to fraudulent activity, not that the defendants have no right to devalue gift cards.

and will move forward. The defendants' motion is therefore DENIED on this basis.

## II.     EQUITABLE CLAIMS

Next, the defendants argue for dismissal of GiftCash's requests for equitable restitution through its unjust enrichment, UCL, and FAL claims, and for injunctive relief through its UCL and FAL claims. The defendants challenge whether GiftCash's requested equitable relief survives the standard from *Sonner v. Premier Nutrition Corp.*, 971 F.3d 834 (9th Cir. 2020).

Under *Sonner*, for claims for equitable restitution to survive a motion to dismiss, "plaintiffs are required, at a minimum, to plead that they lack an adequate remedy at law." *Anderson v. Apple Inc.*, 500 F. Supp. 3d 993, 1009 (N.D. Cal. 2020). For example, plaintiffs may assert "that the equitable restitution they request would go beyond the damages available to them" or that "restitution . . . would be more certain, prompt, or efficient than the legal remedies they request." *Id.* (citing *Am Life Ins. Co. v. Stewart*, 300 U.S. 203, 214 (1937)).

GiftCash plausibly alleges its requests for injunctive relief go beyond the damages available via its conversion claim. *See id.* As I have previously explained, a remedy at law of damages "is retrospective" and compensates plaintiffs for "past purchases," while an equitable injunction "is prospective" and ensures that consumers can rely on the defendant's advertising "in the future." *Zeiger v. WellPet LLC*, 526 F. Supp. 3d 652, 687 (N.D. Cal. 2021); *see also Chaplin*, 2023 WL 4843956, at *6. GiftCash's request for an injunction to stop the defendants from indiscriminately devaluing their gift cards is different from its request for monetary damages via its conversion claim. This is sufficient under *Sonner*. *See Zeiger*, 526 F. Supp. 3d at 687; *Chaplin*, 2023 WL 4843956, at *6. The motion is DENIED on this basis.

GiftCash may seek equitable restitution as the remedy for the 146 gift cards it already sold to customers because GiftCash alleged it lacked an adequate legal remedy and in fact does not bring claims for a legal remedy related to those cards. My Prior Order dismissed the conversion claim as to those gift cards, Prior Order 12:14-18, and despite the defendants' contentions to the contrary, GiftCash does not re-include those 146 cards within the purview of the conversion claim in the amended complaint. *See* FAC ¶¶ 48-67. Even if GiftCash intended to reassert them as part of this claim, it did not plead that it had a property right to cards that had already been sold at the

8

time of the conversion, nor does it seem plausible that GiftCash could make such allegations. *See* Prior Order 12:14-18 (first citing *Beluca Ventures LLC v. Aktiebolag*, 622 F. Supp. 3d 806, 814 (N.D. Cal. 2022); and then citing *Avidor v. Sutter's Place, Inc.*, 212 Cal. App. 4th 1439, 1453 (2013)). Accordingly, the FAC sufficiently pleads that there is no adequate legal remedy for the injury GiftCash incurred via the 146 cards it already sold. GiftCash may pursue its equitable restitution claims for these cards, and the motion is DENIED on this basis.

GiftCash also pleads that there is no adequate remedy at law for the devalued gift cards that remain in its possession. FAC ¶ 47. Ordinarily that would be sufficient to meet the standard under *Sonner* and survive the defendants' motion. *See Johnson v. Trumpet Behav. Health, LLC*, No. 3:21-CV-03221-WHO, 2022 WL 74163, at *3 (N.D. Cal. Jan. 7, 2022) ("[I]f a plaintiff pleads that she lacks an adequate legal remedy, *Sonner* will rarely (if ever) require more this early in the case."). Here, though, GiftCash says that monetary damages from the conversion claim are inadequate because they will not permit GiftCash to recover the face value of the gift cards, but rather only the value it bought or sold the cards for. *See* FAC ¶¶ 41-45; Oppo. 9:9-11:4. But that does not seem to be what the law provides.

Under California law, a plaintiff suing for conversion may recover

> [t]he value of the property at the time of the conversion, with the interest from that time, or, an amount sufficient to indemnify the party injured for the loss . . . ; and . . . [a] fair compensation for the time and money properly expended in pursuit of the property.

Cal. Civ. Code § 3336; *see also Salvador v. Live At Home Care Connection, Inc.*, No. 18-CV-07159-EJD, 2021 WL 3373592, at *5 (N.D. Cal. Aug. 3, 2021) (citing *Myers v. Stephens*, 233 Cal. App. 2d 104, 116 (1965)) (same). Though GiftCash apparently believes that the "value of the property at the time of the conversion" is measured by potential resale value rather than the face value of the gift card, it does not cite any law supporting this method for calculating damages. *See also Lueter v. State of Cal.*, 94 Cal. App. 4th 1285, 1302 (2002) (providing that damages in a conversion action may not be "speculative, remote, imaginary, contingent, or merely possible").

Some California caselaw provides for the recovery of the "market value" of property in a conversion action. *See, e.g.*, *Stroman v. Lynch*, 91 Cal. App. 2d 406, 408, 205 P.2d 409, 410

1  (1949). But other cases provide that recovery can be different from the value at the time of
2  conversion, including in "special circumstances," *Betzer v. Olney*, 14 Cal. App. 2d 53, 61, 57 P.2d
3  1376, 1380 (1936) (citation omitted), or when disgorging the converter's profits, *Stroman*, 205
4  P.2d at 410; *Crofoot Lumber, Inc. v. Ford*, 191 Cal. App. 2d 238, 248 (1961), or "to avoid
5  injustice," *Newhart v. Pierce*, 254 Cal. App. 2d 783, 794 (1967) (citation omitted). And neither
6  cost nor resale price are conclusive evidence of "value" for conversion damages. *See Stroman*,
7  205 P.2d at 408-10; *Lonergan v. Monroe*, 77 Cal. App. 2d 223, 225, 175 P.2d 42, 43 (1946).
8  Taken together, it seems likely that California law permits recovery of the face value of the cards.

9  And while there are apparently no California cases that address damages for conversion of
10 gift cards, in *Meyer v. Thomas*, 18 Cal. App. 2d 299, 63 P.2d 1176, 1177 (1936), the Court of
11 Appeal discussed damages for conversion of a $6,500 promissory note, which was secured by a
12 deed of trust for property worth $2,500. The court found that the defendants would be liable for
13 the value of the note, regardless of the value of the property described in the deed of trust, and that
14 under California law, "presumably the note would be worth its face value." *Id.* at 1179. Though
15 not directly analogous to the present case, it is more on point than any of the (very sparse) case
16 law provided by the parties or cases that I could find. The value of any particular gift card
17 parallels the value of the promissory note in *Meyer* and is measured by its face value, not
18 necessarily the value that would be realized by a subsequent sale. This interpretation is also
19 supported by the underlying gift card statute, which provides that "[t]he value represented by [a]
20 gift certificate belongs to the beneficiary . . . and not to the issuer." Cal. Civ. Code § 1746.9(a).
21 That further suggests that the "value" of a gift card is measured by the face value, not the resale
22 value, meaning GiftCash would be entitled to recover the face value through its conversion claim.

23 GiftCash does not address these cases or statutory language and so its arguments are
24 unconvincing. Assuming that GiftCash can recover the face value of the gift cards, the monetary
25 damages it would receive from its legal claim are identical to those it seeks via equitable
26 restitution. Therefore, it does not plead that its legal remedies are inadequate, given its current
27 legal theory.

28 That said, GiftCash is permitted to plead for equitable restitution in the alternative to legal

10

money damages. *See, e.g.*, *McKay v. Sazerac Co., Inc.*, No. 23-CV-00522-EMC, 2023 WL 3549515, at *8 (N.D. Cal. May 17, 2023); *Brown II*, 2022 WL 1471454, at *13; *Jeong v. Nexo Fin. LLC*, No. 21-CV-02392-BLF, 2022 WL 174236, at *27 (N.D. Cal. Jan. 19, 2022); *Freeman v. Indochino Apparel, Inc.*, 443 F. Supp. 3d 1107, 1114 (N.D. Cal. 2020). Though the FAC does not seek these as alternatives, GiftCash has leave to file an amended complaint clarifying that is what it seeks. If it does so, its claims will survive.

If it chooses to not file an amended complaint, its equitable restitution requests for its unjust enrichment, UCL, and FAL claims are DISMISSED without prejudice. "If, later in the case, the plaintiffs conclude that they do lack adequate remedies at law," including if they determine that their conversion claims are not viable or will not yield the face value of the gift cards, "they should move for leave to amend to re-plead" the claims for equitable restitution. *Johnson*, 2022 WL 74163, at *4.

Therefore, the defendants' motion on this basis is GRANTED in part and DENIED in part.

### III. UCL CLAIM

Next, the defendants argue that even if GiftCash's UCL claim survives the above challenges, it fails to assert standing to bring the claim and fails to state a claim for relief.

"The UCL prohibits 'unfair competition,' which is broadly defined to include 'three varieties of unfair competition—acts or practices which are unlawful, or unfair, or fraudulent.'" *Davis v. HSBC Bank Nev., N.A.*, 691 F.3d 1152, 1168 (9th Cir. 2012) (quoting *Cel-Tech Commc'ns, Inc. v. Los Angeles Cellular Tel. Co.*, 20 Cal. 4th 163, 180, 973 P.2d 527, 540 (1999)). The unlawful, unfair, and fraudulent prongs each "capture[] a separate and distinct theory of liability." *Rubio v. Cap. One Bank*, 613 F.3d 1195, 1203 (9th Cir. 2010) (quoting *Kearns*, 567 F.3d at 1127). Different tests apply to determine whether a plaintiff stated a claim under each prong. *See id.* at 1204-05.

"To establish standing under the UCL, . . . or FAL" for claims based on misrepresentations or omissions, "a plaintiff must allege reliance on the purported misrepresentations at issue and economic injury as a result." *Brown v. Van's Int'l Foods, Inc.*, 622 F. Supp. 3d 817, 824 (N.D.

11

1   Cal. 2022) ("*Brown I*") (first citing *Kwikset Corp. v. Superior Ct.*, 51 Cal. 4th 310, 326-27, 246

2   P.3d 877, 887 (2011)); and then citing *Brown v. Natures Path Foods, Inc.*, No. 21-cv-05132-HSG,

3   2022 WL 717816, at *4 (N.D. Cal. Mar. 10, 2022)). A plaintiff "may demonstrate actual reliance"

4   on an omission "by pleading that 'had the omitted information been disclosed, [she] would have

5   been aware of it and behaved differently.'" *Id.* at 826 (quoting *Daniel v. Ford Motor Co.*, 806

6   F.3d 1217, 1225 (9th Cir. 2015)).

### A. Unlawful Prong

The defendants argue that GiftCash failed to plead reliance on any misrepresentations such that it failed to show it has standing under the UCL, and they move to strike the allegations in the complaint that assert the unlawful prong relies on the breach of contract claim.

As a preliminary matter, the defendants do not contest that "[v]irtually any state, federal or local law can serve as the predicate for an action under" the unlawful prong of the UCL. *Davis*, 691 F.3d at 1168 (citations omitted). Nor do they contest that GiftCash's UCL claim under the unlawful prong relies on its conversion claim, which was sufficiently pleaded. *See* Repl. 8 n.5.

With respect to the standing argument, GiftCash is not required to allege reliance on a misrepresentation to the extent that its claim under the unlawful prong is not based on a misrepresentation. "A plaintiff bringing a claim under the 'unlawful' prong of the UCL must . . . plead actual reliance to establish standing *if the predicate unlawful act is based on misrepresentation or fraud*." *Brown I*, 622 F. Supp. 3d at 824 (quoting *Victor v. R.C. Bigelow, Inc.*, No. 13-cv-02976-WHO, 2014 WL 1028881, at *5 (N.D. Cal. Mar. 14, 2014)) (collecting cases confirming that pleading reliance is necessary where the unlawful claim is based on misrepresentations). But the predicate unlawful act here is the alleged conversion, and so GiftCash did not need to allege reliance. The defendants' argument is unpersuasive and the motion is DENIED on this basis.

Finally, the defendants' request to strike GiftCash's allegations is GRANTED in part and DENIED in part. *See* Repl. 8:19-20:3. GiftCash's breach of contract claim was previously dismissed and not reasserted in the FAC, so it is not clear why it is still included as a predicate for the UCL claim. The motion is GRANTED on that basis. But the defendants do not explain why

the allegation about unlawful business practices meets the standard for striking. *See* Fed. R. Civ. Proc. 12(f) ("The court may strike from a pleading . . . any redundant, immaterial, impertinent, or scandalous material."); *see also Doe 1 v. Univ. of San Francisco*, No. 22-CV-01559-LB, 2023 WL 5021811, at *5 (N.D. Cal. Aug. 4, 2023) ("The function of a [Rule 12(f)] motion to strike is to avoid the unnecessary expenditures that arise throughout litigation by dispensing of any spurious issues prior to trial." (citation omitted)). The motion is DENIED on that basis.

### B.      Unfair and Fraudulent Prongs

####      1.      Standing Under the UCL

The defendants also argue that GiftCash failed to establish standing under the UCL by failing to allege reliance given its allegations about the unfair and fraudulent prongs. *See* Mot. 19:14-20:10. GiftCash clarifies in its opposition that its fraudulent prong is predicated on misrepresentations and omissions, *see* Oppo. 13:20-14:3, but it is not clear whether the unfair prong also relies on misrepresentations and omissions or whether it is predicated on the allegedly unfair devaluation of the gift cards, *see, e.g.*, FAC ¶ 69 ("Defendants have committed unfair competition . . . by engaging in an anticompetitive scheme to devalue a competitor's product and receive an illegal windfall."), ¶ 70 ("The acts, omissions, misrepresentations, practices, and non-disclosures of Defendants . . . constitute a common and continuing course of conduct of unfair competition employing unfair, unlawful, and/or fraudulent business acts or practices . . . including, but not limited to . . . conversion."), etc. And the allegations related to omissions or misrepresentations in the FAC are sparse. GiftCash includes hyperlinks to the defendants' websites and gift card policies in footnotes, *see id.* at 4 nn. 4-6; asserts that the cards are advertised as "redeemable 'at any of our brands online and in stores'" but the websites "materially omit [the defendants'] 'authority' to devalue gift cards in this manner," *id.* ¶¶ 16-17; and asserts that it "relied to [its] detriment on Defendants' false, misleading, and deceptive advertising and marketing practices, including the misrepresentations and omissions set forth above," *id.* ¶ 82.

To the extent that these prongs rely on misrepresentations or omissions, GiftCash does not plead reliance. *See Brown I*, 622 F. Supp. 3d at 824. First, it is not clear how the fact that the cards are advertised as redeemable at any location is relevant to this case. GiftCash's injuries do

13

1  not stem from trying and failing to redeem a card at one of the defendants' locations, but rather
2  from the devaluation of the cards. Even if GiftCash could amend to say it relied on this
3  redeemability statement, it is not clear how that would have anything to do with its claims and so
4  would not be sufficient to show it relied on any misrepresentations or omissions.

5  Second, GiftCash may be able to plead that it relied on the defendants' omission of its
6  ability to indiscriminately devalue gift cards, but it does not do so. GiftCash's single allegation
7  that it "relied" on the defendants' misrepresentations and omissions "set forth above"—which
8  seems to refer to the hyperlinks, though it is not clear—are a far cry from those in *Brown I*, where
9  I found that the plaintiff pleaded actual reliance for her UCL and FAL claims by alleging that she
10 looked at and read the product label before purchase, that she regularly looks at and reads product
11 labels so would have seen the omitted information had it been disclosed, and that she would have
12 behaved differently had the label disclosed the truth. 622 F. Supp. 3d at 826. The allegations in
13 *Brown I* were admittedly far more detailed than necessary to plausibly allege reliance, but
14 GiftCash's allegations are also unlike the sparser allegations I found sufficient in *Gagetta*, where
15 the plaintiff pleaded that he saw, read, and understood the product label before purchase and
16 would have behaved differently had the omitted information been disclosed. 646 F. Supp. 3d at
17 1175. Here, GiftCash does not say it saw the defendants' website before making its purchases
18 from third party gift card sellers. It does not say that, had the truth of the indiscriminate
19 devaluation policy been disclosed before purchase, it would not have purchased the gift cards.
20 Accordingly, it does not plausibly allege reliance, and at least for the fraudulent prong it fails to
21 plead standing under the UCL.

22 To the extent that the unfair prong relies on the devaluation itself, GiftCash was not
23 required to plead reliance on any misrepresentation or omission. California law requires pleading
24 reliance for standing to show that the plaintiff's injury was caused by the defendant's conduct.
25 *See Brown I*, 622 F. Supp. 3d at 824 (explaining that reliance is related to causation and injury
26 (citations omitted)). If GiftCash's injuries were caused by the sudden devaluation, as it seems to
27 assert in the complaint, it does not need to plead that any misrepresentations or omissions caused
28 its injuries. Accordingly, the unfair prong survives this argument and I next turn to the

14

defendants' assertions that GiftCash failed to state a claim.

### 2. Unfair Prong – Failure to State a Claim

To state a UCL claim under the unfair prong, the plaintiff must plead that the defendant's conduct (1) "threatens an incipient violation of an antitrust law"; (2) "violates the policy or spirit of one of those laws because its effects are comparable to or the same as a violation of the law"; or (3) "otherwise significantly threatens or harms competition." *Nationwide Biweekly Admin., Inc. v. Superior Ct. of Alameda Cnty.*, 9 Cal. 5th 279, 302, 462 P.3d 461, 471 (2020) (quoting *Cel-Tech*, 973 P.2d at 544) (emphasis omitted); *see also* Br. for State of Cal. as Amici Curiae In Support of Neither Party, *Epic Games, Inc., v. Apple, Inc.*, 67 F.4th 946 (9th Cir. 2023) (No. 118) at *9-16 (confirming the current state of California law and explaining that pleading violation of an antitrust law is not mandatory because only one of these three elements is required to state a claim under the unfairness prong). GiftCash does not appear to attempt to plead either of the first two routes for an unfairness claim and instead attempts to plead the third route, that the defendants' conduct significantly threatens or harms competition. *See* Oppo. 13:3-18.

Since *Cel-Tech*, California courts have split on how to define "unfairness." *See In re Ins. Installment Fee Cases*, 211 Cal. App. 4th 1395, 1417-19 (2012) (explaining split); *see also Graham v. Bank of Am., N.A.*, 226 Cal. App. 4th 594, 612-13 (2014) (same). One line of cases defines an unfair business practice as one that "offends an established public policy or when the practice is immoral, unethical, oppressive, unscrupulous or substantially injurious to consumers." *In re Ins. Installment*, 211 Cal. App. 4th at 1418 (quoting *Smith v. State Farm Mut. Auto. Ins. Co.*, 93 Cal. App. 4th 700, 718-19 (2001)). Another line requires three factors: "(1) [t]he consumer injury must be substantial; (2) the injury must not be outweighed by any countervailing benefits to consumers or competition; and (3) it must be an injury that consumers themselves could not reasonably have avoided." *Id.* (quoting *Camacho v. Auto. Club of So. Cal.*, 142 Cal. App. 4th 1294, 1403 (2006)).[3] The third "require[s] that the public policy which is a predicate to the action

---

[3] The defendants cite *Ray v. U.S. Bank Tr., N.A. as Tr. for LSF10 Master Participation Tr.*, No. 22-CV-06333-DMR, 2023 WL 3202673, at *4 (N.D. Cal. May 1, 2023), for the standard for pleading unfairness, which relies on the standard in *Camacho*.

15

must be 'tethered' to specific constitutional, statutory or regulatory provisions." *Id.* (citing *Gregory v. Albertson's, Inc.*, 104 Cal. App. 4th 845, 854 (2002)).

GiftCash's allegations are insufficient under any standard. It alleges that the defendants knew about its existence and business model since at least January 2020, *see* FAC ¶¶ 30-32, that the defendants unilaterally devalued GiftCash's gift cards with no warning, *id.* ¶¶ 25, 37, and that the defendants did so as part of an "anticompetitive scheme" to harm a known competitor and "receive an illegal windfall," *id.* ¶ 69. Those allegations do not assert that the defendants engaged in conduct that offended public policy or was immoral, unethical, oppressive, unscrupulous, or substantially injurious to *consumers*. *See Smith*, 93 Cal. App. 4th at 718-19. They also do not allege any of the three requirements outlined by *Camacho*, 142 Cal. App. 4th at 1403. Nor do they "tether[]" any underlying public policy to constitutional, statutory, or regulatory provisions. *See Gregory*, 104 Cal. App. 4th at 854. Accordingly, GiftCash fails to state a claim under the unfair prong of the UCL.

Because it seems possible that GiftCash could plausibly allege a claim under the unfair prong, it has leave to amend to do so.

\*   \*   \*

Accordingly, the motion is DENIED as to the UCL claim. GiftCash plausibly alleges a claim under the unlawful prong. It may amend its allegations under the unfair and fraudulent prong if it wishes, but it does not need do so to for the claim to go forward.

## IV. FAL CLAIM

As with the UCL claim, to the extent that GiftCash's FAL claim is predicated on misrepresentations or omissions, it is required to plead actual reliance. *See Brown I*, 622 F. Supp. 3d at 824; *see also* Mot. 19:14-20:10; 22:12-15 (arguing that GiftCash failed to plead actual reliance). And as with GiftCash's claim under the fraudulent prong of the UCL, its FAL claim is clearly predicated on misrepresentations and omissions: the FAC's description of the FAL claim alleges the defendants made "false, deceptive, and/or misleading omissions" and "representations and statements (by omission and commission) that led reasonable consumers to believe that the gift cards were usable like cash and could not be unilaterally devalued." FAC ¶¶ 78-79.

Therefore, GiftCash was required to plead actual reliance on the misrepresentations and omissions. But for the same reasons addressed above, *supra* Part III.B.1, it failed to do so. The claim is DISMISSED with leave to amend and plausibly allege actual reliance.

## CONCLUSION

For those reasons, the motion is GRANTED in part and DENIED in part. GiftCash may file an amended complaint with 20 days of the date of this order.

**IT IS SO ORDERED.**

Dated: November 17, 2023



William H. Orrick
United States District Judge